UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN J PEREZ,

                Plaintiff,

                Case No. 22-cv-0805-bhl

  v.

OFFICER WALTERS, et al,

                Defendants.

## ORDER ON SUMMARY JUDGMENT

      On July 13, 2022, Plaintiff Kevin J. Perez, proceeding *pro se*, filed a handwritten complaint alleging that his civil rights were violated by several Kenosha police officers, including Defendants Walters and Sorenson, when they arrested Perez following a domestic disturbance involving his wife. (ECF No. 1.) Despite a less-than-clear pleading, the Court allowed Perez to proceed with his lawsuit and gave him time to identify the full names of all the officers implicated by his allegations. (ECF Nos. 4, 8 & 14.) Ultimately, after months of waiting, only Defendants Sorenson and Walters were fully identified. (ECF Nos. 16 & 26.) Both then moved to dismiss the complaint. (ECF No. 22.) Because they supported their motion with factual material outside the complaint, the Court denied their motion without prejudice. (ECF No. 36.) Defendants then moved for summary judgment. (ECF No. 37.) Perez twice moved for extensions of his time to respond, and the Court granted both requests. (ECF Nos. 42, 44, 45, 46.) In granting the second extension, the Court allowed Perez until June 20, 2024 to respond but reminded him of his duties as plaintiff, warning that if he failed to respond, the Court would decide Defendants' motion without further input from him. (ECF No. 46.) The extended deadline came and went but Perez did not file a response. On July 3, 2024, Defendants filed a reply brief, urging the Court to grant their motion. Because the undisputed facts defeat Perez's federal claims, Defendants' motion will be granted. The Court will also relinquish jurisdiction over Perez's state law claims and the case will be dismissed.

# FACTUAL BACKGROUND[1]

Plaintiff Kevin J. Perez is an adult resident of Kenosha County, Wisconsin. (ECF No. 38 ¶1.) Defendants Bradley Walters and Daniel Sorenson were, at the time of the events alleged in the complaint, patrol officers with the Kenosha Police Department. (*Id.* ¶¶2–3.)

On September 10, 2019, Walters and Sorenson were on duty as patrol officers for the overnight shift. (*Id.* ¶6.) They parked in their squad vehicle—fully marked as such—near the 6800 block of 39th Avenue in Kenosha, Wisconsin. (*Id.*) At 3:37 a.m., a "distraught woman," later identified as Kandy Perez, approached Sorenson and Walters on foot, explaining that she wanted to file a domestic violence complaint against her husband, Kevin Perez. (*Id.* ¶7.) Mrs. Perez reported that she was in the process of filing for divorce but still shared a residence with Perez, whom she claimed had a history of abusing her. (*Id.* ¶8.) She reported that Perez had abused her that same night when he returned home intoxicated at approximately 2:00 a.m. (*Id.* ¶9.) She told officers Perez knocked on the bedroom door, called her derogatory names and then began to act "crazy," grabbing her by the throat, throwing her against the kitchen wall, and grabbing her arms. (*Id.* ¶¶9–11.) These movements caused Mrs. Perez pain and bruising to the point that Sorenson and Walters could visibly see her injuries and bruising on Mrs. Perez's neck and biceps. (*Id.* ¶¶10–14.)

Mrs. Perez further reported that she had told Perez that she intended to call the police. (*Id.* ¶15.) At that point, Perez took her phone, slammed it on the ground, and poured the contents of her purse on the living room chair. (*Id.* ¶¶15–16.) Because she feared for her safety, Mrs. Perez fled the residence and sought help at a nearby business until she made contact with Sorenson and Walters. (*Id.* ¶17.) She told them she feared for her safety and believed Perez would have harmed her further had she not left her residence. (*Id.* ¶18.) She ultimately refused medical treatment and transport. (*Id.* ¶19.)

After speaking with Mrs. Perez, Sorenson and Walters went to the Perez residence, 4000 Grant Road, Kenosha, Wisconsin. (*Id.* ¶20.) With Mrs. Perez's permission, they entered the home. (*Id.*) They saw Mrs. Perez's purse contents on the living room chair and a framed picture knocked askew on the wall, confirming Mrs. Perez's story. (*Id.* ¶¶20–21.) Mrs. Perez then led the officers

---

[1] These facts are derived from Defendants' statement of proposed facts and accompanying exhibits in support of its motion for summary judgment. (ECF No. 38.) When a party fails to a respond to a motion for summary judgment, the Court accepts the moving party's version of the facts as true. *Terrell v. Am. Drug Stores*, 65 F. App'x 76, 77 (7th Cir. 2003); Civ. L.R. 56(b)(4).

upstairs, where Perez slept. (*Id.* ¶22.) The officers announced their presence and Perez awoke. (*Id.*) The officers noted Perez slurred his speech and offered incoherent responses to their questions. (*Id.* ¶23.) They asked him about the domestic incident with his wife, but Perez denied it occurred, stated that Mrs. Perez "went all retarded," and refused to elaborate on that statement. (*Id.* ¶24.) Perez refused to cooperate with officers' requests and instead asked them to leave. (*Id.* ¶25.) He then began "following a cat" in the room and ignored officers' demands to stay in the room. (*Id.*)

The officers then took stock of Mrs. Perez's statements, their observations of her obvious signs of injury that corroborated her statements, and Perez's lack of cooperation, and decided they had probable cause to arrest Perez for domestic violence charges. (*Id.* ¶26.) They informed Perez he was under arrest. (*Id.* ¶27.) Sorenson placed Perez in the back of his squad vehicle and transported him to Kenosha County Jail, where he was held on three state criminal charges: victim intimidation, domestic violence; battery domestic violence; and disorderly conduct domestic violence. (*Id.* ¶28.)

Walters completed what is called a Kenosha County Domestic Abuse Worksheet that documents his and Sorenson's observations including Mrs. Perez's injuries, the parties' demeanor, and domestic violence risk factors. (*Id.* ¶29.) On the worksheet, Mrs. Perez indicated that Perez struck her first and had struck her in the past. (*Id.*) Walters prepared Mrs. Perez's witness statement and a notice of restraint protection. (*Id.* ¶30.) Mrs. Perez reviewed both documents and signed them as true and accurate. (*Id.*) Walters then used his Kenosha County police digital camera to photograph Mrs. Perez's injuries, the contents of her purse on the living room chair, and the framed photograph askew on the wall. (*Id.* ¶31.)

Later, on September 10, 2019, the state of Wisconsin filed a criminal complaint against Perez and charged him with felony intimidation of a witness, battery, and disorderly conduct. (*Id.* ¶32.) A Kenosha County Circuit Court Commissioner later determined there had been probable cause to believe Perez committed felony intimidation of a witness on September 10, 2019. (*Id.* ¶33.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different views of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)). While these principles apply to both represented and *pro se* parties, this Court's local rules offer additional safeguards to help ensure unrepresented parties understand the summary judgment process. When a represented party files a motion for summary judgment against a *pro se* litigant, Civil Local Rule 56(a)(1)(A) requires the moving party to include in their motion "a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented

by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion." Rule 56(a)(1)(B) also requires the moving party to include in their motion "the text to Fed. R. Civ. P. 56 (c), (d), and (e), Civ. L.R. 56(a), Civ. L.R. 56(b), and Civ. L.R. 7," which describe the proper procedure and form for responding to a motion for summary judgment, as well as the consequences of failing to do so.

Defendants provided Perez full notice of the summary judgment process and his response obligations, as required by the local rules. (*See* ECF No. 37.) Despite this notice, and even after multiple extensions from the Court, Perez has not responded to Defendants' motion. While *pro se* litigants "benefit from various procedural protections" not afforded to represented parties (such as the notice requirements described above), they "are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Under Civil Local Rule 56(b)(2), Perez was required to file a brief in opposition to Defendants' motion and a response to its proposed statement of facts. His failure to file either document results in this Court accepting Defendants' version of the facts as undisputed for the purpose of summary judgment. *See* Fed. R. Civ. P. 56(e)(2); Civ. L.R. 56(a)(1)(A); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

Perez's failure to respond does not end the matter, however. Federal Rule of Civil Procedure 56 still requires Defendants "'to show that summary judgment [is] proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson*, 1 F.4th at 483 (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)). That being said, the Court is not required to do Perez's job for him. The Court need not "scour the record looking for factual disputes" to support Perez's claims. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). It is Perez's responsibility to "present evidence sufficient to establish a triable issue of fact on all essential elements of [each of his claims]." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23). Allegations in his complaint, unsupported by other evidence, are not enough. *See Puckett v. Soo Line R.R. Co.*, 897 F.2d 1423, 1425 (7th Cir. 1990) ("[Plaintiff's] reliance upon the allegations contained in her complaint to create genuine issues of material fact is wholly misplaced."); *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1265 (7th Cir. 1990) ("[T]he facts alleged in plaintiffs' complaint have little relevance at the summary judgment stage.").

## ANALYSIS

Defendants seek summary judgment on Perez's federal law claims for violations of his Fourth and Fifth Amendment rights as well as his claims under state law. Because the Court concludes that Defendants are entitled to summary judgment on the federal law claims, it will follow well-established federal procedure and decline to exercise jurisdiction over Perez's state law claims and dismiss the case.

### I. Defendants Had Probable Cause to Arrest Perez.

Perez's complaint alleges that Defendant's violated his Fourth Amendment rights by unlawfully arresting him. (*See* ECF No. 1; ECF No. 36 at 1.) The lawfulness of his arrest turns on whether Defendants had probable cause to believe he had committed a crime; if they had probable cause, Perez's Fourth Amendment claim fails. *See Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014) (citing *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008)).

Whether a police officer has probable cause to arrest depends on what the officer saw and heard, and the facts known to him or her at the time of arrest. *See Tebbens v. Mushol*, 692 F.3d 807, 816 (7th Cir. 2012). The relevant inquiry is whether at the time of the arrest, the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). At the same time, an officer cannot close his eyes to information that cuts against probable cause. *Abbott v. Sangamon County*, 705 F.3d 706, 718 (7th Cir. 2013) (citing *Fox v. Hayes*, 600 F.3d 819, 834 (7th Cir. 2010)). The Court must consider the totality of the circumstances known to the officers and not focus on a small part of the overall picture. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 60-61 (2018). Given the context-driven nature of the inquiry, probable cause is found as a matter of law "only when the facts permit but one conclusion—that is, 'only when no reasonable jury could find that the officer did not have probable cause' to make an arrest." *Jones ex rel. Jones v. Webb*, 45 F.3d 178, 182 (7th Cir. 1995) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)).

Defendants argue that they had probable cause to arrest Perez for battery, disorderly conduct, and felony victim intimidation. (ECF No. 39 at 8–15.) As to the first offense, Wisconsin's battery statute makes it a Class A misdemeanor to cause bodily harm to another with intent to cause bodily harm to that person without that person's consent. Wis. Stat. § 940.19(1).

If the bodily harm is "substantial" or "great," the offense is classified as a Class I, Class H, or Class E felony. Wis. Stat. § 940.19(2)–(5). With respect to the second basis for arrest, Wisconsin's disorderly conduct statute makes it a Class B misdemeanor for a person to engage "in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance." Wis. Stat. § 947.01(1). Finally, it is a Class G felony in Wisconsin to "knowingly and maliciously prevent[] or dissuade[]" or to attempt to prevent or dissuade, "another person who has been the victim of any crime" from making a police report of their victimization or seeking the arrest of any person connected to their victimization with "any express or implied threat of force, violence, injury or damage." Wis. Stat. § 940.44; § 940.45.

Defendants had probable cause to arrest Perez for all three offenses. Mrs. Perez told officers that Perez had verbally and physically assaulted her that night, first yelling at her and then grabbing her by the throat and throwing her against the kitchen wall. (ECF No. 38 ¶¶8–10.) Officers corroborated Mrs. Perez's statements by observing bruising on her neck and biceps, the contents of her purse on the living room chair, and a picture frame askew on the wall. (*Id.* ¶¶13–14, 20–21.) These facts—that Mrs. Perez suffered bodily harm, and Perez intended to cause her bodily harm—provide ample probable cause that Perez committed battery in violation of Wis. Stat. § 940.19(1). Perez's violent behavior in causing Mrs. Perez that bodily harm also supports a finding of probable cause that Perez engaged in disorderly conduct in violation of Wis. Stat. § 947.01. Probable cause "does not mean certainty, or even more likely than not, that a crime has been committed." *Hanson v. Dane County*, 608 F.3d 335, 338 (7th Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). And Mrs. Perez's subsequently corroborated statement to police that Perez took her phone, slammed it on the ground, and poured the contents of her purse on the living room chair when she had told him that she intended to call the police, (ECF No. 38 ¶15), supports a probable cause finding for witness intimidation. These undisputed facts are more than sufficient to provide Defendants probable cause to believe that Perez had committed all three offenses. *See Anderson v. City of West Bend Police Dep't.*, 774 F. Supp. 2d 925, 943–44 (E.D. Wis. 2011) (holding defendant officers had probable cause to believe the plaintiff violated Wisconsin's domestic abuse statute when his partner called 911, his partner appeared upset when speaking to police, and neighbors heard a woman yell "help me" and "loud banging"). His Fourth Amendment claim fails as a matter of law.

Perez's arrest was also proper because Wisconsin law mandates the arrest of domestic abuse suspects in certain circumstances, including the situation at issue here. (ECF No. 39 at 14.) Wisconsin Statute Section 968.075 states that officers who have "reasonable grounds" to believe that a person is committing or committed domestic abuse and either has a reasonable basis for believing continued abuse is likely, there is evidence of physical injury to the victim, or the person is the predominant aggressor must arrest that person. Wis. Stat. § 968.075(2)(a). The statute defines domestic abuse as either (1) "intentional infliction of physical pain, physical injury or illness"; (2) "intentional impairment of physical condition"; (3) sexual assault; or (4) "[a] physical act that may cause the other person reasonably to fear imminent engagement of" the above conduct. Wis. Stat. § 968.075(1)(a). To protect victims from continuing domestic abuse, officers must consider the following information in identifying a predominant aggressor: the history of domestic abuse from the parties, statements made by witnesses, the relative degree or injury inflicted on the parties, the extent to which any person fears any party, whether any party is threatening or has threatened future harm, whether either party acted in self-defense. Wis. Stat. § 968.075(ar).

Defendants argue that Perez's arrest was mandatory under Section 968.075. (ECF No. 39 at 15.) The Court agrees. Defendants Sorenson and Walters had more than "reasonable grounds" to believe that Perez committed domestic abuse upon hearing Mrs. Perez's testimony that Perez injured her and corroborating that testimony with their own observations. That satisfies the first requirement of Section 968.075. Defendants also had reasonable grounds to infer that Perez would likely continue to abuse his wife (because Mrs. Perez stated he had abused her in the past) and that there was physical injury to Mrs. Perez, satisfying the second requirement of the statute. Thus regardless of the status of probable cause for other offenses—which, on this record, they had—state law required Defendants to arrest Perez. This makes Perez's arrest lawful, and his Fourth Amendment claim fails.

Because the Court agrees that Defendants had ample probable cause to support Perez's arrest, the Court need not reach Defendants' alternative argument that they are entitled to qualified immunity. (*See* ECF No. 39 at 16–19.) Defendants' motion for summary judgment on Perez's Fourth Amendment unlawful arrest claim is therefore granted.

**II.    *Miranda* Violations Are Not Redressable Under Section 1983, Defeating Perez's Other Constitutional Claim.**

Perez alleges that Defendants violated his Fifth Amendment rights by interrogating him without a *Miranda* warning. (*See* ECF No. 1 at 2; ECF No. 36 at 1.) The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." U.S. Const. amend.. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court embraced additional "prophylactic measures" to help secure the rights protected by the Fifth Amendment. *See id.*; *Chavez v. Martinez*, 538 U.S. 760, 772 (2003). Under *Miranda*, prosecutors are precluded from using a suspect's statements made during police questioning unless the suspect was first informed of and waived his rights to counsel and against self-incrimination prior to the interrogation. 384 U.S. at 444–45. These warnings are intended "to prevent violations of the right protected by the text of the Self-Incrimination Clause—the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning." *Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018) (quoting *Chavez*, 538 U.S. at 772). Because these "prophylactic measures" go beyond the requirements of the Fifth Amendment, the Seventh Circuit has recognized that *Miranda* violations alone do not provide a basis for a Section 1983 claim. *Id.*; *Fosnight v. Jones*, 41 F.4th 916, 923 (7th Cir. 2022) (citing *Chavez*, 538 U.S. at 772). The Seventh Circuit's approach was confirmed by the Supreme Court, as the Court explained that a *Miranda* violation by itself is not "tantamount to a violation of the Fifth Amendment." *Vega v. Tekoh*, 597 U.S. 134, 141 (2022). Rather, *Miranda* only created rules to safeguard a suspect's Fifth Amendment right during his or her custodial interrogation. *Id.* Thus, it is entirely possible for an un-*Mirandized* suspect to "make self-incriminating statements without any hint of compulsion." *Id.* at 142.

Defendants argue that they are entitled to summary judgment on Perez's Fifth Amendment *Miranda* claim. In their view, Perez was not interrogated while in custody, and *Miranda* warnings are only required when a suspect is in custodial interrogation. (ECF No. 39 at 19.) Defendants further insist that, regardless, under *Vega*, a *Miranda* violation does not give rise to a Section 1983 suit. (*Id.*)

Defendants are again correct. Perez's complaint only states allegations that Defendants attempted to talk to him, while Perez "repeated [his] Miranda rights." (ECF No. 1 at 2.) The Seventh Circuit and Supreme Court are clear that this is not a violation of the Fifth Amendment

and therefore cannot be the basis of a Section 1983 claim. Therefore, Defendants' summary judgment motion will be granted with respect to Perez's Fifth Amendment claim, too.

### III. The Court Will Decline to Exercise Supplemental Jurisdiction Over Perez's Remaining State Law Claims.

A district court may decline to exercise supplemental jurisdiction over state-law claims if it dismisses all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). While discretionary, the presumption is that the Court will relinquish federal jurisdiction over supplemental state-law claims when all federal claims in a suit are dismissed before trial. *Id.* (citing *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). Considerations displacing this presumption include:

> (1) [T]he statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (quoting *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

Defendants request the Court dismiss the pendent state law claims. (ECF No. 39 at 20.) The Court will grant their request. As explained above, Perez has no remaining federal claim in this suit. And Perez has not argued that any considerations which would merit displacing the presumption that a district court should relinquish federal jurisdiction over state-law claims when all federal claims in the suit are dismissed; indeed, he has failed to respond to the motion for summary judgment whatsoever. Thus Defendants' motion for summary judgment is granted and the entirety of Perez's case is dismissed.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 37, is **GRANTED**. Perez's federal claims are **DISMISSED with prejudice**; his state claims are **DISMISSED without prejudice**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on August 20, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge